FILED by _VT_ D.C.
ELECTRONIC

February 25, 2008

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

## 08-CV-60263-Zloch-Snow

RODNEY DEAS
On behalf of himself and all others
similarly situated,

      Plaintiff,

v.

REGIONS FINANCIAL CORPORATION,
a foreign corporation and REGIONS BANK,
a subsidiary of REGIONS FINANCIAL
CORPORATION,

      Defendants.

_____/

**COLLECTIVE ACTION**

## COMPLAINT FOR DAMAGES

### INTRODUCTION

1.    This is a collective action brought pursuant to the Fair Labor Standards Act of 1938. 29 U.S.C. §§201–219 (hereinafter "FLSA") to recover unpaid overtime compensation owed to Plaintiff RODNEY DEAS ("DEAS") and all others similarly situated who were formerly or are currently employed as "loan originators" by Defendants REGIONS FINANCIAL CORPORATION (hereinafter "REGIONS FINANCIAL") and REGIONS BANK (hereinafter "REGIONS").

2.    Upon information and belief, REGIONS employs loan originators to sell home mortgage loans throughout Florida, the South, Midwest and Texas.

3.    For at least three years prior to the filing of this complaint and continuing (hereinafter "Liability Period"), REGIONS has had a policy and practice of consistently

1

ADAMS, CASSIDY, PHILLIPPI & PICCOLO
One East Broward Blvd., Suite 1410, Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

encouraging and requiring their loan originator employees to work in excess of forty (40) hours a week without paying them overtime compensation as required by the FLSA § 29 U.S.C §207.

4.      Pursuant to the FLSA, on behalf of himself and all others similarly situated to him who were formerly or are currently employed as loan originator employees of REGIONS during the liability period, seeks overtime compensation, liquidated damages, pre- and post-judgment interest and attorney's fees from REGIONS.

5.      Loan Originators will request the Court to authorize concurrent notice to all loan originator employees who are employed by REGIONS or who were so employed during the liability period, informing them of the pendency of this action and their right to opt into this lawsuit pursuant to the FLSA. 29 U.S.C. §216(b).

## JURISDICTION

6.      This Court has jurisdiction over this action pursuant to the Fair Labor Standards Act of 1938 ("FLSA") (as amended). 29 U.S.C. §216(b) and 28 U.S.C. §§1331, 1337.

## VENUE

7.      Venue is proper in this Court under 28 U.S.C. §1331 because the Defendant conducts business in this District.

## PARTIES

8.      DEAS was and is, at all material times, a resident of Gwinnett County, Georgia.

9.      DEAS was and is, at all material times, a covered, non-exempt employee of REGIONS within the meaning of the FLSA, 29 U.S.C. §203(e) and (g).

10.      DEAS started his career with REGIONS as a loan originator in January 2007 and departed REGIONS employ on February 15, 2008.

2

ADAMS, CASSIDY, PHILLIPPI & PICCOLO
One East Broward Blvd., Suite 1410, Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

11.     During the liability period, REGIONS paid DEAS, as well as all loan originators, a recoverable weekly draw which was recoverable against commissions and under payments under the Mortgage Loan Originator Plan ("MLOP"), attached hereto as Exhibit "A."

12.     During the liability period, DEAS regularly worked in excess of forty (40) hours per week, without receiving overtime compensation.

13.     The draw is classified as unforgivable and is netted against commissions, so, in essence, loan originators sometimes worked for free or below minimum wage.  If in any month, a loan originators draw exceeds the amount payable under the MLOP, then the excess will be carried forward and future MLOP payments will be reduced by such excess until it is used up. See Exhibit A.

14.     In the event loan originators' commission deficit amount reaches 100% of his/her monthly draw, the monthly draw is reduced by half, but not less than $600 per month.

15.     Defendant REGIONS is a foreign profit corporation, with its principal place of business in Birmingham, Alabama.

16.     Defendant REGIONS is subject to the requirements of the FLSA.

17.     Defendant REGIONS is the employer of DEAS within the meaning of the FLSA, 29 U.S.C. §203(d).

18.     At all times material hereto, Defendant REGIONS was an enterprise engaged in commerce with annual gross sales in excess of $500,000 within the meaning of the FLSA.

## GENERAL FACTUAL ALLEGATIONS

19.     Defendants hired Plaintiff DEAS to work as a loan originator on or about January 2007.

20.     The primary duty of a loan originator is to sell home mortgage loans.

3

21.   DEAS did not have supervisory authority over any employees.

22.   DEAS exercised no discretion or independent judgment in discharging his duties as a loan originator.

23.   REGIONS has a practice of requiring its loan originators to perform "floor coverage" in its bank branches on a daily basis. DEAS was assigned to five different bank branches.

24.   DEAS was required to attend mandatory meetings, social functions and participate in community outreach projects sponsored by REGIONS.

25.   Loan originators do not require any special skills or specialized training.

26.   DEAS regularly worked a substantial amount of hours over forty each week.

27.   Defendant was aware that DEAS regularly worked hours over forty each week.

28.   During the relevant time period, REGIONS did not make, keep or preserve records of hours over 40 per work week worked by DEAS.

29.   As a uniform policy, REGIONS does not compensate its loan originators at the rate of one and one-half times their regular rate for hours worked over forty each week because they were misclassified as nonexempt employees.

30.   Loan originators were not exempt from the maximum hour requirements of the FLSA pursuant to 29 U.S.C. §213(a)(1).

31.   There are numerous persons similarly situated to DEAS who are or were employed as loan originators for REGIONS during the liability period in all areas in which Regions operates its business in Alabama, Florida, Georgia, Tennessee, Louisiana, South Carolina, Arkansas and Texas.

4

32.     Upon information and belief, during the liability period, Defendant willfully and recklessly denied compensation at the rate of one and one-half times the regular rate of pay to its loan originators.

33.     During the relevant time period, Defendant did not make, keep or preserve records of hours over 40 per work week worked by its loan originators during the liability period.

34.     The Plaintiff has been required to retain the services of the undersigned attorneys and is obligated to pay a reasonable fee therefore.

35.     The Plaintiff is entitled to attorneys' fees pursuant to the FLSA 29 U.S.C. §216(b) and Fla. Stat. §448.08.

## COUNT I – VIOLATIONS OF FLSA

36.     Plaintiff DEAS hereby incorporates by reference, as if fully restated herein, the allegations in paragraphs 1-35, above.

37.     Defendants' failure to provide DEAS with overtime compensation for hours worked over 40 per week constitutes a violation of the maximum hour provision of the FLSA, 29 U.S.C. §207.

38.     Defendants' failure to provide DEAS with overtime compensation was willful and deliberate.

39.     Defendants' failure to make, keep, or preserve records of hours over forty per work week worked by DEAS constitutes a violation of 29 U.S.C. §211(c).

WHEREFORE, Plaintiff DEAS prays that this Court issue an Order:

            a)     Accepting jurisdiction over this action;

            b)     Authorizing the issuance of notice at the earliest possible time to all loan originator employees similarly situated to DEAS who are or were

ADAMS, CASSIDY, PHILLIPPI & PICCOLO
One East Broward Blvd., Suite 1410, Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

employed by the Defendant during the three years immediately preceding the filing of this action. The notice should inform them this action has been filed, describe the nature of the action and explain their right to opt-in to this lawsuit if they worked in excess of forty (40) hours per work week during the liability period, without receiving overtime compensation as required by the FLSA;

c)  Awarding Plaintiff damages for the amount of unpaid overtime compensation accrued during the liability period subject to proof at trial;

d)  Awarding Plaintiff liquidated damages, pursuant to 29 U.S.C. §216(b), in an amount equal to the overtime compensation owed to him, or in the alternative, prejudgment interest;

e)  Awarding Plaintiff post-judgment interest, reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b); and

f)  All such other relief as this Court may deem just and equitable.

## COUNT II – VIOLATIONS OF FLSA AS TO OTHERS SIMILARLY SITUATED TO PLAINTIFF

40.  Plaintiff DEAS hereby incorporates by reference, as if fully restated herein, the allegations in paragraphs 1-35, above.

41.  Defendants' policies are countrywide and are implemented in each and every state and/or region in which Defendants do business.

42.  Defendants' failure to provide overtime compensation to loan originator employees similarly situated to DEAS whom they are or have employed for hours worked over

6

40 per week constitutes a violation of the maximum hour provisions of the FLSA. 29 U.S.C. §207.

43.    Defendants' failure to pay overtime compensation to loan originator employees similarly situated to DEAS was willful and deliberate.

44.    Defendants' failure to make, keep or preserve records of hours over forty per work week worked by loan originator employees similarly situated to DEAS whom they are or have employed constitute a violation of 29 U.S.C. §211(c).

WHEREFORE, Plaintiff DEAS on behalf of those loan originator employees similarly situated to him, prays that this Court issue an Order:

        a)    Accepting jurisdiction over this action;

        b)    Awarding damages for the amount of unpaid overtime compensation accrued during the liability period to all of those loan originator employees similarly situated to DEAS who join this suit, subject to proof at trial;

        c)    Awarding liquidated damages in an amount equal to the overtime compensation owed to pursuant to 29 U.S.C. §216(b) to all of those similarly situated, or in the alternative, prejudgment interest;

        d)    Awarding post-judgment interest, reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b) to all of those similarly situated to DEAS ; and

        e)    All such other relief as this Court may deem just and equitable.

ADAMS, CASSIDY, PHILLIPPI & PICCOLO
One East Broward Blvd., Suite 1410, Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

## COUNT III- VIOLATION OF 29 U.S.C. §206(a)(1), DEFENDANTS' FAILURE TO PAY MINIMUM WAGE-DEAS

45.   Plaintiff DEAS hereby incorporates by reference, as if fully restated herein, the allegations in paragraphs 1-35, above.

46.   Throughout Plaintiff DEAS's employment with Defendants, Defendants violated the FLSA, 29 U.S.C. §206(a)(1), by failing to pay Plaintiff DEAS at least the minimum wage for each and every hour that he worked, during given workweeks that he worked for Defendants.

47.   Defendants' violation of Plaintiff DEAS's right to minimum wage under the FLSA were knowing and willful, and Defendants violated that right despite its knowledge that the FLSA was "in the picture," and in reckless disregard of Plaintiff DEAS's right to the minimum wage under the FLSA.

48.   As a consequence of Defendants' violations of Plaintiff DEAS's rights under the FLSA, Plaintiff DEAS is entitled to his unpaid minimum wages, prejudgment and post judgment interest, an additional and equal amount in liquidated damages, a reasonable attorney's fee, and the costs of the action pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiff DEAS prays that this Court issue an Order:

     a)    Accepting jurisdiction over this action;

     b)    Authorizing the issuance of notice at the earliest possible time to all loan originator employees similarly situated to DEAS who are or were employed by the Defendant during the three years immediately preceding the filing of this action. The notice should inform them this action has been filed, describe the nature of the action and explain their right to opt-in to this lawsuit if they worked in excess of forty

8

ADAMS, CASSIDY, PHILLIPPI & PICCOLO
One East Broward Blvd., Suite 1410, Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

(40) hours per work week during the liability period, without receiving

overtime compensation as required by the FLSA;

c)   Awarding Plaintiff damages for the amount of unpaid overtime

compensation accrued during the liability period subject to proof at

trial;

d)   Awarding Plaintiff liquidated damages, pursuant to 29 U.S.C. §216(b),

in an amount equal to the overtime compensation owed to him, or in

the alternative, prejudgment interest;

e)   Awarding Plaintiff post-judgment interest, reasonable attorney's fees

and costs pursuant to 29 U.S.C. §216(b);

f)   Plaintiff DEAS also prays for a declaratory judgment that Defendants

violated the minimum wage provision of the FLSA and that

Defendants' violations of the FLSA were known and willful, was not

in good faith, and was not based upon reasonable grounds; and

g)   All such other relief as this Court may deem just and equitable.

## COUNT III- VIOLATION OF 29 U.S.C. §206(a)(1), DEFENDANTS' FAILURE TO PAY MINIMUM WAGE-OTHERS SIMILARLY SITUATED

49.   Plaintiff DEAS hereby incorporates by reference, as if fully restated herein, the

allegations in paragraphs 1-35, above.

50.   Throughout loan originators' employment similarly situated to Plaintiff DEAS,

Defendants violated the FLSA, 29 U.S.C. §206(a)(1), by failing to pay loan originators' similarly

situated to Plaintiff DEAS at least the minimum wage for each and every hour that they worked,

during given workweeks that they worked for Defendants.

9

51.   Defendants' violation of loan originators' similarly situated to Plaintiff DEAS right to minimum wage under the FLSA were knowing and willful, and Defendants violated that right despite its knowledge that the FLSA was "in the picture," and in reckless disregard of loan originators' similarly situated to Plaintiff DEAS right to the minimum wage under the FLSA.

52.   As a consequence of Defendants' violations of loan originators' similarly situated to Plaintiff DEAS rights under the FLSA, similarly situated loan originators are entitled to their unpaid minimum wages, prejudgment and post judgment interest, an additional and equal amount in liquidated damages, a reasonable attorney's fee, and the costs of the action pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiff DEAS prays that this Court issue an Order:

a)   Accepting jurisdiction over this action;

b)   Authorizing the issuance of notice at the earliest possible time to all loan originator employees similarly situated to DEAS who are or were employed by the Defendant during the three years immediately preceding the filing of this action. The notice should inform them this action has been filed, describe the nature of the action and explain their right to opt-in to this lawsuit if they worked in excess of forty (40) hours per work week during the liability period, without receiving overtime compensation as required by the FLSA;

c)   Awarding Plaintiff damages for the amount of unpaid overtime compensation accrued during the liability period subject to proof at trial;

10

d)      Awarding Plaintiff liquidated damages, pursuant to 29 U.S.C. §216(b), in an amount equal to the overtime compensation owed to him, or in the alternative, prejudgment interest;

e)      Awarding Plaintiff post-judgment interest, reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b);

f)      Plaintiff DEAS also prays for a declaratory judgment that Defendants violated the minimum wage provision of the FLSA and that Defendants' violations of the FLSA were known and willful, was not in good faith, and was not based upon reasonable grounds; and

g)      All such other relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Demand is hereby made for a trial by jury.

Dated: February 20, 2008.

ADAMS, CASSIDY, PHILLIPPI & PICCOLO
*Attorneys for Plaintiff DEAS*
One East Broward Boulevard
Suite 1410
Ft. Lauderdale, Florida 33301
Phone: (954) 764-6450
Fax: (954) 764-6448

By:_____
Marshall A. Adams, Esquire
Florida Bar No: 712426
Madams@acplaw.net
Bernard M. Cassidy, Esquire
Florida Bar No.: 0099351
BCassidy@acplaw.net
E. Nannette Piccolo, Esquire
Florida Bar No: 0530311
Npiccolo@acplaw.net

11

# REGIONS FINANCIAL CORPORATION



## 2008 MORTGAGE LOAN ORIGINATOR PLAN I
No Salary/Standard Tiers

**EXHIBIT "A"**

2008 MORTGAGE LOAN ORIGINATOR PLAN I

I.    **PLAN PURPOSE**

    A.   The purpose of the Plan is to provide incentive compensation to Mortgage Loan Originators (MLO) of Regions Mortgage to:

        i    Increase the volume and profitability of Region's mortgage loan portfolio without impairment of loan quality;

        ii   Encourage excellence in the performance of individual responsibilities;

        iii  Reward plan participants whose behaviors promote soundness, profitability and growth of the organization;

        iv  Provide an additional opportunity for cash compensation for Mortgage Loan Originators who are positioned to make significant contributions to Region's success;

        v   Attract and retain career-oriented Mortgage Loan Originators.

II.   **PLAN MEASURES:**

    The MLO will be measured based on closed loan gains.  Gains shall mean the total of Origination Fee, Overage/Shortage, and Processing Fee (if the production office normally collects such a fee.)    Any uncollected fees will be deducted from gains.

III.  **AWARD DETERMINATION**

    A.   **Basic Commission Structure**

        i    Commissions will be paid based on the specific tier achieved for the total loans produced in a given month, retroactive to the first loan closed.  Commissions will be calculated based only on loan production that is confirmed closed on the Empower system for each measurement period. Commission will be paid on the last pay period of the following month.

        ii   Upon determination of a participant's monthly closed loan gains. the participant will be assigned to a Commission tier.  The amount of a commission is calculated by multiplying the commission percentage associated with the commission tier by the monthly closed loan gains amount for that month.  The commission tiers are as follows:

| Monthly Closed Loan Gains | Commission % | Retroactive |
|---|---|---|
| $0 - $5,000 | 35% | Retroactive to $1 |
| $5,001 - $10,000 | 50% | Retroactive to $1 |
| $10,001 - $15,000 | 55% | Retroactive to $1 |
| $15,001 - $25,000 | 60% | Retroactive to $1 |
| Over $25,000 | 65% | Retroactive to $1 |

2008 MORTGAGE LOAN ORIGINATOR PLAN I

B   **Exceptions to Basic Commission Structure**

   i  Not withstanding the above, the amount of commission for the month shall be adjusted or otherwise calculated as follows:

      a  **Refinances**

         1  All refinance transactions are subject to standard tiered production payout less 5% per loan.   Refer to section (d) additional incentive if the refinance transaction is considered LMI.

      b  **Community Lending Products**

         1  Standard commission tiers apply with an additional 5% of gains on the following products:
- Bond Loans, Rural Housing, CRA97 and CRA100 Plus
  Overages are not permitted regardless of LMI calculations. A minimum commission of $150.00 will be paid on Community Lending Products.

           If the borrower(s) meet the LMI definition (Any loan where the borrowers' total household verified income is 80% or less of the county median income limits.), the compensation outlined above in section (b) will not apply. Refer to the LMI section (d) for compensation details.

      c  **FHA and VA**

         1  Standard commission tiers apply with an additional 5% of gains paid per loan. If the borrower(s) meet the LMI definition (Any loan where the borrowers' total household verified income is 80% or less of the county median income limits.), the compensation outlined above in section (c) will not apply. Refer to the LMI section (d) for compensation details.

      d  **Low to Moderate Income (LMI)**

         1  Standard tiers will apply with an additional $_____ per loan for any loan where the borrowers' total verified household income is 80% or less of the county median income limits.  The incentive will be paid based on the current market risk category of where the property is located at time of loan closing.

         2  LMI calculations exclude the following:  Second homes, Investor properties, NINA, NIVA, SIVA, SISA, Purchase transactions with a CLTV =< of 80%, Construction Perms and Lot loans.

2008 MORTGAGE LOAN ORIGINATOR PLAN I

e   **Reverse Mortgages**

1   The MLO will be paid standard referral fee incentive for any closed Reverse Mortgage Referral.   Reverse Mortgage volume will not be included for purposes of production volume or calculating the MLO gain tier.
- $500 –Closed Reverse Mortgage referral
  The MLO referral will be reduced by $50.00 if a bank partner refers the reverse mortgage to the MLO and the MLO refers the Reverse Mortgage.

f   **Associate Referral**

1   If a referral made by a Regions associate to a MLO results in a closed loan, the MLO's commission (includes no longer employed MLO's) will be reduced by $50 in the event the referring Regions associate is entitled to a $50 referral fee and the loan is designated as a "referral" in the Empower system. Associates referring other associates are not eligible for the referral fee.

g   **Associate Loans**

1   MLO will be paid 25% of closed loan gains on loans that are eligible for the associate discount.  Gains from Associate Loans will be included in the total monthly gains to determine applicable commission tier.   Overages are not permitted on associate loans.

2   If the associate discount does not apply to the loan, the MLO is entitled to commissions based on standard applicable commission tier.

3   Community Lending, FHA and VA products as referenced in sections (b) and (c) are eligible for an additional 5% of gains (Max 30%).

4   If Associate loan qualifies as LMI refer to section (d) for additional incentive.

5   Associate Refinance - The 5% gains reduction will not apply as referenced in section (a).

6   Associate loans are not eligible for overages or shortages.

h   **Construction Permanent Loans**

1   The commission on a construction loan will be based upon the amount of the loan at the initial closing date.  The initial closing date for the purposes of this subparagraph is the date that the loan is secured, which is before construction begins.

2   Underage
- CP underage will be charged against commission in the month following initial closing.

3   Overages
- Overages will be paid at the time of loan modification based on the applicable commission tier at the time of modification.

2008 MORTGAGE LOAN ORIGINATOR PLAN I

4   Decrease in Loan Amount at Modification
- If Origination fee was collected at initial closing:  If the final loan amount at modification is less than the original loan amount at closing, the excess origination fee will not be refunded to the borrower and the MLO gains will not be adjusted.  There is not a penalty for the dollars that do not convert.

- If Premium Pricing is used as origination the MLO's gains will be adjusted for the month in which the loan modifies.  Incentive is recalculated and adjustment made to the next month's commissions.

5   Increase in Loan Amount at Modification
- If the loan amount at modification is greater than the original loan amount at closing, the borrower is required to pay an origination fee of 1% on the difference in the loan amount.  The origination fee on the increased amount should be collected at the time of modification or, if the loan does not modify, at the time of the payoff of the construction loan.  A commission on the increase in loan amount, for which an origination fee was collected on the increased amount, will be paid with respect to the month of conversion, but the increase will not be included in volume for purposes of determining the commission tier.

6   Non Conversion Fee
- A 1% non conversion fee is required if the original loan does not convert. Compensation will not be paid on the non conversion fee.

7   Fees on closed CP loans
- CP Admin Fee – An uncollected CP Admin fee will be deducted 100% from MLO's commissions.
- CP Modification/Conversion fee -  An uncollected CP Modification/Conversion fee will be deducted from MLO's Gains.
- Lender Paid Closing Costs are not permitted (excludes origination as part of premium pricing).

i   **Brokered Loans**

1   Brokered loan production volume will factor into the Loan Originators tiers for commission payments and is included in overall volume for reporting purposes.   Income on brokered loans is limited to 2% for any fees made payable to Regions from the broker.  Loan Originator gains percentage will be 35%.   Brokering loans that could be closed by Regions or using lenders not approved by Regions will result in discipline up to and including termination.

j   **Second Mortgages - Private Investor Products**

1   If any portion of the origination fee is collected in cash or as part of premium pricing, the actual fee collected will be used in gain calculations. If an origination fee is not collected, no income will be used for the gains calculation. Production volume will be included in overall volume for reporting purposes.

2008 MORTGAGE LOAN ORIGINATOR PLAN I

k   Servicing Modifications

    1   Some loans currently serviced by Regions Mortgage and owned by Regions Financial Corporation are eligible for Modification. Commissions on Modifications after funding will be paid as follows:

- $350 commission

- Modification gains will not be used to determine applicable commission tier.

l   Early Prepayment/Payoff

    1   In the event that Regions sells a loan to a private investor and a prepayment penalty is paid to the investor, the prepayment penalty paid may be retroactively reduced from any commission or overage paid to the MLO.

    2   If a Regions portfolio loan payoff occurs within 120 days of closing, the prepayment penalty will be equal to the capitalized MSR and any above par pricing. The prepayment penalty paid may be retroactively reduced from any commission or overage paid to the MLO.

    3   In either scenario, the adjustment will never exceed the amount of the commission paid on the loan, nor will it reduce to less than zero the total commission paid for the month in which the adjustment is made. The decision whether to make such an adjustment is at the discretion of the Regional Manager. The adjustment will be made for the month in which the penalty is paid, but at the discretion of the Regional Manager, the adjustment may be taken over a period of more than one month.

m   HELOC/HELOAN Production

    1   Simultaneous or convenience line incentive

    2   For the purpose of incentive calculation, Regions assumes a 1% Gain on funded HELOC/HELOAN production closed simultaneous with the first mortgage for gain tier calculations. The amount funded is included in MLO production volume and is used to determine the MLO's applicable commission tier

    3   On loans that close on or within 30 days of the first mortgage closing. the MLO will be paid incentive as follows:

- If 30% or more of the approved credit line is funded, the MLO will be paid standard gain tiers based on funded amount.

- If 0 to 29.9% of the approved credit line is funded the MLO will be paid standard gain tiers based on 15% of the approved credit line.

## 2008 MORTGAGE LOAN ORIGINATOR PLAN I

n   **Cross Sell Bank Products**

   1   Referrals will be tracked through the All in One Referral System and incentives will be paid quarterly

   2   Payouts will be earned per customer in the following categories:

- $25.00 per category for deposit products including checking, savings and money market
- $25.00 per category for loan products for example, boat, auto and stand alone equity
- $25.00 per category for Line of Business referrals
- Maximum payout is $25.00 per category

o   **Production Sales Assistants**

   1   Should the participant be supported by a Production Sales Assistant (PSA), the attached PSA Addendum will apply.

p   **Overage Limits - Overages shall not exceed 2 points on any loan.**

   1   Overages are not allowed on:

- Loans equal to or less than $50,000 (excludes second homes, investor properties, purchase transactions with a CLTV =< of 80% and lot loans).
- All Associate Loans
- Bond Loans, Rural Housing, CRA97 and CRA100 Plus (overages are not permitted regardless of LMI calculations)
- LMI loans as referenced in section (d) are limited to .375% in overage.

q   **Fee Shortages**

   1   The following uncollected fees on closed, cancelled, withdrawn and denied loans will be deducted one hundred percent (100%) from the MLO's commissions.

- Appraisal Fee – HUD Line 803

   2   The following uncollected fees on closed loans will be deducted one hundred percent (100%) from the MLO's commissions:

- Credit Report – HUD Line 804  (closed loans only)
- Construction Admin Fee -  HUD line 823 (closed loans only)

   3   The following uncollected mortgage ancillary fees on closed loans will be deducted from gains.

- Underwriting Fee – HUD Line 1115
- Construction/Perm modification/conversion fee – HUD Line 1327
- Doc Prep Fee – HUD Line 827
- Doc Handling Fee – HUD line 1304
- Application Fee – HUD Line 818

## IV. REDUCTION OR LOSS OF COMMISSIONS

    A. Errors and Omissions

        i   In any case where Regions' procedures or instructions with respect to MLO responsibility have been violated by the MLO with respect to any loan, the Administrator, in his or her discretion, may withhold a portion or the entire commission due on the applicable loan. In addition, in the event that such a violation results in a loss in excess of the commission earned on the applicable loan, the loss may be charged against the commissions earned on other loans

    B. Compliance Penalty: The following penalties will be deducted from the MLO commissions each month based on reporting received from the Mortgage Compliance Dept.:

        i   $50.00 per RESPA violation on applications with property (closed, cancelled, withdrawn or denied)

        ii   $50.00 per ECOA violation on pre-quals, pre-approval and applications (closed, cancelled, withdrawn or denied)

## V. DRAW

    A.   The MLO is eligible to receive a "draw". The draw shall be an advance towards commissions and other payments under the Plan. If in any month, the draw exceeds the amount otherwise payable under the Plan, then such excess will be carried forward and future Plan payments will be reduced by such excess until it is used up. Any amount paid as a draw will count toward payments otherwise payable under the Plan.

    B.   In the event the commission deficit amount reaches 100% of the monthly draw, the monthly draw will be reduced by half, but not less than $600. Once the deficit amount has been repaid and earnings have exceeded the previous draw by 25% for 3 consecutive months, MLO may request (with Regional Manager approval) that draw be increased to the amount prior to reduction.

## VI. PAYMENT OF COMMISSION

**Timing of Payment** - Generally, commissions, including any adjustments, earned for a month shall be paid no later than the last pay period of the month following the month during which the commissions were earned

2008 MORTGAGE LOAN ORIGINATOR PLAN I

VII.   **MONTHLY BUSINESS DEVELOPMENT ALLOWANCE**

A.   Regions will reimburse the MLO for reasonable business development expenses that are properly submitted, up to the amount of the MLO's monthly allowance. To determine the monthly allowance amount, the prior twelve (12) months of closed loan volume will be used. See the chart below. A full expense report must be submitted on a monthly basis and must include receipts and a mileage log for any mileage expensed. A Travel and Expense (T & E) report must be submitted by the 25th day of the month following the month of the expense.

| 12 Month Volume | Monthly Allowance |
|---|---|
| $0 - $7,999,999 | $100 |
| $8,000,000 - $11,999,999 | $225 |
| $12,000,000 - $17,999,999 | $300 |
| $18,000,000 and over | $350 |

B.   Any expenditure in excess of the monthly allowance must have prior approval by the MPM. Reasonable business development expenses are generally defined as business meals, cell phone usage, traveling and lodging for business related travel. Dues and sponsorships to events (i.e. homebuilder, realtors) should be discussed with MPM before commitments are made.

VIII.   **PLAN PARTICIPATION**

A.   For the purposes of the Plan, a Regions associate is eligible to participate if he/she meets all of the following criteria:

i.   The associate holds the Mortgage Loan Originator job title.

ii.   The associate is not participating in any other similar incentive plan sponsored by Regions during the current Performance Period

iii.   New Participants, Promotions, or Transfers

a.   Associates, who are recently hired, transferred or promoted into eligible positions and meet the criteria listed above will enter the Plan on the first day of the next calendar month.

b.   If MLO transfers to another position in Regions that does not participate under this Plan, MLO will be paid Commission Payment on eligible mortgage loans funded up to the MLO's transfer date.

IX.   **PERFORMANCE STANDARDS**

A.   MLOs are expected to meet certain performance standards. MLOs that do not attain the minimum production may be terminated or reassigned. This and other Standards of Performance must be adhered to and acknowledged by the MLO. The minimum MLO Performance Standards are attached.

☑010/013

2008 MORTGAGE LOAN ORIGINATOR PLAN I

X.   **TERMINATION**

A.   Upon termination of employment, voluntary or involuntary, the MLO will be paid the difference between any draw paid for the month of termination and commissions earned up to the date of termination. Commissions earned prior to termination will be paid at the same time and in the same manner as they would have been paid had the termination not occurred. A draw payment will be made to the MLO only if he/she earned commissions during the pay period.

B.   Should a plan participant terminate employment with the Corporation, either voluntarily or involuntarily, any negative draw must be satisfied before any final compensation can be paid. Upon request by the Corporation, the plan participant agrees to repay any draw advance balance remaining should the final compensation not cover a deficit balance. In the event that the MLO has any uncollected funds due to Regions from, but not limited to, fee waivers, loan shortages, draws and non-delivery fees, the MLO agrees to reimburse Regions immediately upon notification.

C.   It is understood that prior to leaving the employment of the Corporation, no loan will be transferred to any other lending institution. All equipment, files, records, correspondence and training materials are the property of the Corporation.

XI.   **PAYMENT OF AWARDS**

A.   In the event the Participant is determined by the Administrator to have violated the Regions Code of Business Conduct and Ethics, or to have acted in a manner contrary to the best interests of Regions, the Administrator shall cancel the Participant's participation in the Plan for the remainder of the Performance Period, and the Participant shall not receive any future award payments under the Plan, including an award payment earned but not yet paid. Notwithstanding the above, in the event the Administrator determines that such violation or action is immaterial, the Administrator may permit the Participant to continue to participate and collect future awards. The Participant shall have the right to appeal the Administrator's determinations with respect to violations, actions contrary to the best interests of Regions, and materiality to an appeal committee established by the Human Resources department.

B.   Payment of Awards. Awards shall be paid through payroll (less required withholding) as soon as administratively feasible following the end of each calendar month. Regardless of the length of any delay in payment, interest shall not be paid on any award payment described herein.

XI.   **EXTRAORDINARY OCCURENCES**

A.   Should an award recipient fail to be recognized due to an extraordinary event, such as an act of God, War or event that is uncontrollable and/or reasonably unforeseeable by Regions, the awards would be presented at a later date convenient to both the recipient and the company. The award may be adjusted, subject to the approval of the Retail National Mortgage Production Manager, to reflect the impact of the extraordinary event.

2008 MORTGAGE LOAN ORIGINATOR PLAN I

<u>XII.</u>  <u>PLAN ADMINISTRATION AND AMENDMENT</u>

A.  The Plan shall be effective following its approval and adoption by the Compensation Committee. The Administrator shall be responsible for the management and administration of the Plan. The Administrator may delegate certain administrative responsibilities as he deems appropriate to officers of Regions. Except as otherwise provided herein, any decisions by the Administrator relating to awards due under the Plan shall be final and binding on Participants.

B.  The Compensation Committee may, at any time, by an Instrument in writing, amend, suspend or terminate the Plan, in whole or in part, as it deems appropriate and in the best interests of Regions.

C.  The Mortgage Loan Originator Plan I ("Plan") is a cash compensation plan designed to encourage and reward certain types of performance and to appropriately set compensation levels for certain associates employed by Regions Financial Corporation and its affiliates (collectively, "Regions"). It is not a contract of employment with participating associates, nor does it provide a guarantee of continued employment. The Plan does not provide retirement benefits or health and welfare benefits, and is not intended to be, nor is it, covered by the Employee Retirement Income Security Act. Awards under the Plan are paid from the general assets of Regions. Participating associates of Regions have no vested benefits in the Plan and no vested rights to or interests in any payments under the Plan until such payments are made. A Participant's rights and interests under the Plan may not be assigned or transferred.  The Plan constitutes a policy regarding payment of incentives that are discretionary on the part of Regions. The Plan may be amended or terminated at any time by Regions.

By your signature below, you acknowledge that participation in this plan does not constitute a contract for employment and it does not alter your status as an employee at will.  Also, you acknowledge that this plan fully supersedes and replaces any and all prior plans, policies, statements, or other communications, whether verbal or written, that in any way state or explain compensation for mortgage loan originators.

Signature: _____

Print Name

Date

MLO PLAN I  No Salary/Standard Tiers  11-08-07

11 of 12

2008 MORTGAGE LOAN ORIGINATOR PLAN I

## DEFINITIONS

**Administrator** shall mean the Retail National Product Manager.

**Closed** shall mean all loan paperwork is signed by the borrower and accepted by Regions and confirmed closed in Empower. Refinance loans are not considered closed until out of rescission.

**Commissions** shall mean commission incentive.

**Commission Deficit** shall mean the amount by which the draw for a month or months exceeds commissions, including adjustments for Pricing Overages and Pricing Underages, earned for a month or months.

**Commission Tier** shall mean the level of total monthly loan gains and associated percentage to which a participant is assigned.

**Compensation Committee** shall mean the Compensation Committee of the Board of Directors of Regions Financial Corporation.

**Empower** shall mean the database used to store information regarding loans made by Regions associates.

**Fee Shortage** shall mean the amount of any fees related to a loan waived or otherwise not collected by a Participant.

**Gain** Gains shall mean the total of Origination Fee, Overage/Shortage, and Processing Fee (if the production office normally collects such a fee.) Any uncollected fees will be deducted from gains.

**Modification** shall mean a change to the terms of a loan after the loan is closed and funded.

**Monthly Allowance** shall mean amounts paid to Participants for the purpose of defraying reasonable expenses incurred in the performance of their duties. Such expenses include cell phone usage, travel and entertainment.

**Negative Carry Forward** shall mean the amount of Commission Deficit from a previous month or months carried forward to a subsequent month and reduced from commissions earned for that subsequent month.

**Participant** shall mean any associate who meets the requirements in Section VII.

**Performance Period** shall mean the calendar month, quarter or year as indicated by context.

**Plan** shall mean The Regions Financial Corporation 2007 Mortgage Loan Originator Plan I.

**Pricing Overage** shall mean the locking in and closing of a loan at a price higher than the Regions house price.

**Pricing Underage** shall mean the locking in and closing of a loan at a price less than the Regions house price.

**Regions** shall mean Regions Financial Corporation and its affiliates.

**Simultaneous HELOC/HELOAN** shall mean a HELOC/HELOAN that closes in conjunction with a first mortgage within the first 30 days of initial closing.

Attachments:

☐ MLO Performance Standards
☐ Associate Discount Policy

MLO PLAN I  No Salary/Standard Tiers  11-08-07

**Regions Mortgage**
**Mortgage Loan Originators 2008 Performance Standards Addendum to Compensation Plan**

All Mortgage Loan Originators (MLOs) will be measured on these Performance Standards.

1.  The MLO will take a complete application in compliance with all regulatory and corporate requirements.

2.  All ECOA, Patriot Act and RESPA requirements must be met.

3.  The applicant must be counseled on documentation needed to support the loan request with an accurate Good Faith Estimate provided.

4.  MLO will counsel the applicant regarding option of locking interest rate or floating. MLO will register loan immediately with Secondary Marketing indicating the lock or float decision. MLO will complete and have Applicant execute a Rate and Discount Pricing Agreement indicating the decision to lock or float. MLO is to maintain contact with Applicant with regard to rate and terms until such time as all loan terms have been agreed upon, at which time information is to be keyed in Empower immediately.

5.  In the event an MLO fails to lock a loan after being requested to do so by the applicant, the MLO should advise the Production Manager immediately and lock the loan in accordance with the terms committed to the applicant. Failure to do so immediately, upon discovery of the error, is grounds for termination.

6.  All loan applications must be entered into Empower within two (2) calendar days of application.

7.  Loans submitted to the Operations Center should include documentation of income and assets per DU/LP, Credit Policy or Private Investor requirements.

8.  All Production Offices Denials (Sales Center Denial) must be received in the mortgage compliance department with 15 days of the action taken in Empower on the ECOA action screen. All other loans requiring a declination loans must be sent to the applicable Operations Center within 15 days of the loan decision in Empower.

9.  The MLO should review pipeline on a weekly basis and purge inactive loans. Canceled loans are to be submitted to the mortgage compliance department within 15 days of the action taken in Empower. At all times the pipeline should contain only active "in process" loans.

10. Closed loan volume should equal seven (7) loans and/or $750,000 per month or greater.
    New MLO minimum closed loan volume should be as follows unless otherwise stated based on MLO initial offer guidelines:

| | |
|---|---|
| 2nd Full month of employment | $200,000 |
| 3rd Month of employment | $300,000 |
| 4th Month of employment | $500,000 |
| 5th Month of employment | $500,000 |
| 6th Month of employment | $650,000 |
| 7th Month of employment and ongoing | $750,000 |

11. Closed loan volume must also be at least 50% purchase or new home financing.

12. The primary duty of the MLO is to develop new mortgage production for the corporation. In order to fulfill this responsibility, the MLO is required to make outside sales calls on a regular basis to existing relationships as well as with new business sources. These referral sources should include realtors, builders, financial planners, non-profit agencies, bank branches and any other entity that can provide continual and repetitive business. The MLO's success and achievement of goals will be dependent on these outside sales calls.

13. All MLOs should be diligent in referring potential customers to bank partners to further enhance meeting the customer's financial needs.

14. All marketing materials must be created by Mortgage Marketing Support or Corporate Marketing. The use of outside vendors is prohibited without prior approval from Mortgage marketing or Corp marketing. MLOs are not permitted to create marketing pieces or place the Regions logo on a marketing piece or other item to be distributed without prior approval by Mortgage Marketing Support or Corporate Marketing.

_____        _____
Mortgage Loan Originator's Signature        Date

1 of 11

11/8/2007

**JS 44** (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Rodney Deas

**DEFENDANTS**
Regions Financial Corporation, a foreign corporation and Regions Bank, a subsidiary of Regions Financial Corporation ☐

**(b)** County of Residence of First Listed Plaintiff   Gwinnett, Georgia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)
Adams, Cassidy, Phillippi & Piccolo, One East Broward Boulevard, Suite 1410, Fort Lauderdale, FL 33301

Attorneys (If **08-60263**

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE ✓ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
✓ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

*0'08 CN 60263-W5Z-* (SS)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

FILED by INTAKE ☐ D.C.

FEB 25 2008

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## V. ORIGIN   (Place an "X" in One Box Only)
✓ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

a) Re-filed Case ☐ YES ☒ NO          b) Related Cases ☐ YES ✓ NO

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
JUDGE _____          DOCKET NUMBER _____

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Defendant failed to pay Plaintiff overtime compensation for work over 40 hours per week, FLSA 20 U.S.C. Sec. 207.
LENGTH OF TRIAL via 3-4 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE  2/20/08

FOR OFFICE USE ONLY
AMOUNT _____   RECEIPT # _____   IFP _____

542394